IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ALEXANDER LUKASHOV, JR.,

        Defendant.

3:09-cr-00120-BR
(3:14-cv-00520-BR)

OPINION AND ORDER

**BILLY J. WILLIAMS**
Acting United States Attorney
**SCOTT M. KERIN**
**JANE H. SHOEMAKER**
**KELLY ALEXANDRE ZUSMAN**
Assistant United States Attorneys
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1002

        Attorneys for Plaintiff

**TODD H. GROVER**
Ward Grover, LLP
516 S.W. Thirteenth Avenue, Suite 201
Bend, OR 97702
(541) 312-5150

        Attorneys for Defendants

1  - OPINION AND ORDER

BROWN, Judge.

This matter comes before the Court on Defendant Alexander Lukashov, Jr.'s Motion (#246) to Vacate or Correct Sentence under 28 U.S.C. § 2255.  For the reasons that follow, the Court **DENIES** Defendant's Motion and **DECLINES** to issue a certificate of appealability.

## BACKGROUND

On April 2, 2009, Defendant was indicted on three counts of sexual abuse of TF, the then eight-year-old daughter of Defendant's girlfriend, Cassedy Filer:  Count One, Aggravated Sexual Abuse in violation of 18 U.S.C. § 2241(c); Count Two, Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b); and Count Three, Transportation with Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a).

On February 22, 2009, officers responded to a call regarding an unwanted individual at Filer's residence.  While at the residence officers discovered Filer was wanted on an outstanding warrant.  Because Filer was the only person at the residence with small children, however, the officers did not arrest Filer that day.  The next day, February 23, 2009, officers arrived at Filer's residence to arrest her on the outstanding warrant.  While officers were at the home Filer informed the officers that

2  - OPINION AND ORDER

they needed to speak with TF, her daughter from another marriage.

TF told the officers that Defendant sexually abused her during a recent long-haul trip in Defendant's semi-truck. During the conversation TF retrieved a plastic bag from a closet that contained a pink blanket and a pair of girls' purple underwear. The officers took TF to CARES Northwest, a shelter for abused children.

The following day, February 24, 2009, TF was examined by child-abuse specialists at CARES. During her CARES examination TF reported Defendant compelled her to engage in several sexual acts including anal, oral, and vaginal sex during the trip. There were, however, no physical signs of abuse aside from bruises on one of TF's knees and her hip. Nonetheless, Dr. Linda Lorenz, one of the CARES child-abuse specialists who interviewed TF, concluded TF's physical examination and statements were "consistent with her allegations of sexual abuse."

A forensic examination of the blanket that the officer collected at Filer's residence did not turn up any evidence. An examination of the girls' purple underwear, however, revealed sperm heads with DNA matching Defendant's DNA, but no seminal fluid.

On the basis of this evidence the government arrested and indicted Defendant. Defendant's primary theory at trial was that Filer coached TF to make the sexual-abuse allegations as a

3  - OPINION AND ORDER

response to Defendant seeking to end his relationship with Filer,
threatening to take custody of their children, and attempting to
gain a tactical advantage in any subsequent custody proceedings.

Before trial Defendant moved to exclude the testimony of
Dr. Lorenz.  The Court denied that motion and permitted Dr.
Lorenz to testify, albeit with some limitations to preclude
vouching for the truthfulness of TF's testimony.  At trial
Defendant introduced the testimony of Dr. William Brady who
testified he expected TF to demonstrate greater physical signs of
sexual abuse based on her testimony.

To support Defendant's theory that Filer coached TF to make
the sexual-abuse allegations, defense counsel moved to admit the
testimony of Filer's ex-husband, Merlin Filer, and Filer's
sister, Ruth White.  Specifically, defense counsel moved to admit
Merlin Filer's testimony that Cassedy Filer falsely accused him
of physically assaulting her after Merlin flushed Cassedy's drugs
down the toilet and that she threatened he would never see their
children again.  In addition, defense counsel moved to admit
Merlin Filer's testimony that Cassedy Filer once put makeup on
her own leg and threatened to call the police to report her
stepfather had assaulted her and that Filer falsely told TF that
Merlin Filer had physically abused TF.  Defense counsel contended
this evidence was admissible under Federal Rule of Evidence
404(b) to prove Cassedy Filer's pattern of fabrication and

4  -  OPINION AND ORDER

retaliation against partners and family members.

At the pretrial conference the Court excluded Defendant's proposed testimony regarding specific instances of Filer's misconduct, but permitted Defendant to introduce the testimony of Merlin Filer and White regarding Cassedy Filer's bad character for truthfulness.  Ultimately the defense elicited testimony from White concerning Cassedy Filer's bad character for truthfulness, but did not call Merlin Filer as a witness.

After a five-day trial the jury convicted Defendant of Count One, acquitted Defendant on Count Two, and failed to reach a verdict on Count Three.  This Court sentenced Defendant to 30 years imprisonment, which was the mandatory minimum term applicable to Count One.

Defendant appealed his conviction to the Ninth Circuit Court of Appeals contending, *inter alia*, that this Court improperly excluded Merlin Filer's testimony regarding Cassedy Filer's prior acts.  The Ninth Circuit, however, concluded the Court did not abuse its discretion when it excluded Merlin Filer's "specific-instance" testimony, and affirmed Defendant's conviction.  *See United States v. Lukashov*, 694 F.3d 1107, 1117-18 (9th Cir. 2012).

5   - OPINION AND ORDER

## STANDARDS

28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court
> established by Act of Congress who claims the right to
> be released on the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States or that the court was without jurisdiction to
> impose such sentence or that the sentence was in excess
> of the maximum authorized by law or is otherwise
> subject to collateral attack, may move the court that
> imposed the sentence to vacate, to set aside or to
> correct the sentence.

> \* \* \*

> If the court finds the judgment was rendered without
> jurisdiction or that the sentence imposed was not
> authorized by law or otherwise open to collateral
> attack or that there has been such a denial or
> infringement of the constitutional rights of the
> prisoner as to render the judgment vulnerable to
> collateral attack, the court shall vacate and set the
> judgment aside and shall discharge the prisoner,
> resentence him, grant a new trial, or correct the
> sentence as may appear appropriate.

Although "the remedy [under § 2255] is . . . comprehensive, it
does not encompass all claimed errors in conviction and
sentencing. . . . Unless the claim alleges a lack of
jurisdiction or constitutional error, the scope of collateral
attack [under § 2255] has remained far more limited." *United
States v. Izaguirre*, No. 3:12-cr-00414-BR, 2014 WL 2003147, at *1
(D. Or. May 15, 2014)(quoting *United States v. Addonizio*, 442
U.S. 178, 185 (1979)).

6  - OPINION AND ORDER

## DISCUSSION

In his Motion (submitted *pro se*)[1] Defendant raises four claims of ineffective assistance of counsel:  (1) Trial counsel violated his duty of loyalty to Defendant at the pretrial conference when counsel allegedly stated he did not believe Cassedy Filer coached TF, (2) trial counsel was deficient for failing to call an expert regarding false allegations of child sexual abuse, (3) trial counsel unreasonably failed to cross-examine Dr. Lorenz regarding TF's demeanor during her interview, and (4) trial counsel failed to vigorously cross-examine Filer and TF regarding TF's sexual knowledge and failed to call various defense witnesses.

In Defendant's Reply (#275) submitted by counsel, Defendant narrows his claims to two:  (1) trial counsel was deficient for failing to argue that Defendant had a constitutional right to introduce the specific-instance testimony notwithstanding its inadmissibility under the Federal Rules of Evidence and (2) trial counsel unreasonably failed to retain an expert witness to testify to the prevalence of false sexual-abuse allegations in the general population.

After reviewing the claims Defendant raised in his Motion

---

[1] Although Defendant filed his Motion *pro se*, on June 20, 2015, the Court granted Defendant's Motion (#254) for Appointment of *Pro Bono* Counsel.  On July 13, 2015, appointed counsel for Defendant, Todd H. Grover, filed on behalf of Defendant a Reply (#275) in Support of Defendant's Motion.

7  - OPINION AND ORDER

that he did not reiterate in his Reply, the Court concludes those claims do not have any merit. Accordingly, the Court addresses only those two claims argued by Defendant in his Reply.

## I.    Ineffective Assistance of Counsel Standard

The Supreme Court has established a two-part test to determine whether a defendant has received constitutionally-deficient assistance of counsel. *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). *See also Strickland v. Washington*, 466 U.S. 668, 678, 687 (1984). Under this test a defendant must not only prove counsel's assistance was deficient, but also that the deficient performance prejudiced the defense. *Premo*, 131 S. Ct. at 739. *See also Schurz v. Ryan*, 730 F.3d 812, 815 (9th Cir. 2013); *Sully v. Ayers*, 725 F.3d 1057, 1068 (9th Cir. 2013); *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012); *Ben-Sholom v. Ayers*, 674 F.3d 1095, 1100 (9th Cir. 2012).

To prove the deficiency of counsel's performance the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011)(quoting *Strickland*, 466 U.S. at 688). *See also Sexton*, 679 F.3d at 1159 (citing *Premo*, 131 S. Ct. at 739). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688. *See*

also *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012)(same).

In assessing whether counsel's performance was deficient, courts must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler*, 693 F.3d at 1149 (quoting *Strickland*, 466 U.S. at 689). Ultimately the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011)(quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013)(quoting *Strickland*, 466 U.S. at 694). *See also Sexton*, 679 F.3d at 1159 (citing *Premo*, 131 S. Ct. at 739). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Saesee*, 725 F.3d at 1048 (quoting *Strickland*, 466 U.S. at 695). *See also Sexton*, 679 F.3d at 1160.

9  - OPINION AND ORDER

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697.  *See also Heishman v. Ayers*, 621 F.3d 1030, 1036 (9th Cir. 2010); *Singh v. Knipp*, 518 F. App'x 524, 525 (9th Cir. 2013).  "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'"  *Strickland*, 466 U.S. at 697.  *See also Saesee*, 725 F.3d at 1048; *Heishman*, 621 F.3d at 1036.

## II.  Defendant's Claim One - Counsel's Failure to Argue a Constitutional Basis for Admission of Specific-Instance Testimony

As noted, in Claim One Defendant contends trial counsel rendered ineffective assistance of counsel when he attempted to have the Court admit the specific-instance testimony of Merlin Filer and Ruth White through Federal Rule of Evidence 404(b) rather than asserting that Defendant had a constitutional right to elicit such testimony.  Defendant contends in his Reply that trial counsel was deficient in his assistance because the Rule 404(b) argument was hopeless and still counsel failed to argue that Defendant had a constitutional right to introduce the specific-instance testimony that was otherwise barred by Rule 404(b).  Specifically, Defendant contends trial counsel should have argued the evidence was admissible under *Miller v. Stanger*:

> In weighing the importance of evidence offered by a
> defendant against the state's interest in exclusion,

10 - OPINION AND ORDER

> the court should consider the probative value of the
> evidence on the central issue; its reliability; whether
> it is capable of evaluation by the trier of fact;
> whether it is the sole evidence on the issue or merely
> cumulative; and whether it constitutes a major part of
> the attempted defense.  A court must also consider the
> purpose of the rule; its importance; how well the rule
> implements its purpose; and how well the purpose
> applies to the case at hand.  The court must give due
> weight to the substantial state interest in preserving
> orderly trials, in judicial efficiency, and in
> excluding unreliable or prejudicial evidence.

757 F.2d 988, 994-95 (9th Cir. 1985)(citations omitted).  *See*

*also Alcala v. Woodford*, 334 F.3d 862, 877-78 (9th Cir.

2003)(applying *Miller* and finding counsel ineffective for failing

to argue the exclusion of an expert who would testify that the

primary witness's testimony may have been the product of

suggestive interview techniques violated the defendant's

constitutional right to a defense).  "[D]epending on the facts

and circumstances of the case, at times a state's rules of

evidence cannot be mechanistically applied and must yield in

favor of due process and the right to a fair trial."  *Lunbery v.*

*Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010).  Nonetheless, "[a]n

accused does not have an 'unfettered right' to present any

evidence he or she wishes."  *Id.* (quoting *Taylor v. Illinois*, 484

U.S. 400, 410 (1988)).

Here the Court concludes trial counsel's performance was not

deficient for failing to argue that Defendant had a

constitutional right to elicit the particular specific-instance

testimony because such an argument would have been unsuccessful.

11 - OPINION AND ORDER

The specific instances that Defendant sought to elicit testimony about were only slightly related to his theory that Filer coached TF into alleging Defendant sexually abused her.  Moreover, Defendant elicited from White, Cassedy Filer's sister, testimony regarding Filer's bad character for truthfulness and vigorously pursued other opportunities to develop his coaching theory through the course of trial, including through cross examination of TF and Filer.  Thus, the specific-instance testimony that Defendant sought to introduce was only slightly relevant to his theory of the case, and, in any event, Defendant was not prejudiced by trial counsel's failure to persuade the Court to admit the testimony.

The cases that Defendant relies on to support his proposition that a defendant's constitutional right to present a defense can overcome evidentiary rules involve more important evidence than that which Defendant now contends trial counsel failed to have the Court admit.  In *Lundbery* the Ninth Circuit concluded the defendant had a constitutional right to introduce otherwise reliable hearsay statements that were inadmissible under California evidentiary rules and that directly inculpated an unrelated person in the victim's murder (605 F.3d at 762) and in *Alcala* the excluded expert testimony was "highly probative" because it had "remarkable impeachment value" with regard to the only witness that directly tied the defendant to the murder (334

12 - OPINION AND ORDER

F.3d at 877).   Here the proposed specific-instance testimony

merely provides anecdotal evidence that further undermines a non-

victim witness's character for truthfulness and manipulation.

This specific-instance testimony does not come close to being as

probative as the vital evidence that the trial courts excluded in

*Alcala* and *Lundbery*.   Accordingly, the Court finds the

evidentiary value of Defendant's proposed specific-instance

testimony is modest.

On the other hand, Rule 404(b) serves the important purpose

of focusing trial on the issues central to the case and avoiding

"mini-trials" about corollary issues.   The specific-instance

testimony that Defendant sought to introduce in this matter

highlights the importance of Rule 404(b) in that introduction of

that testimony likely would have necessitated significant factual

inquiry into each of the specific instances.   Extensive

litigation regarding those instances would have substantially

frustrated the Court's ability to conduct an orderly trial and to

ensure the material facts were presented to the jury in an

efficient, understandable manner.   Accordingly, the Court

concludes the limitations imposed by Rule 404(b) did not violate

Defendant's constitutional right to present his defense in this

case.

On this record, therefore, the Court concludes Defendant's

trial counsel did not render ineffective assistance of counsel

when he did not argue that the limitations of Rule 404(b) with regard to specific-instance testimony were overcome by Defendant's constitutional right to present such testimony as a defense.

## III.  Defendant's Claim Two - Counsel's Failure to Introduce Expert Testimony Regarding the Prevalence of False Sexual-Abuse Allegations

As noted, in Claim Two Defendant contends trial counsel provided ineffective assistance when he failed to locate and to call an expert witness to testify in general about the frequency with which children falsify reports of sexual abuse.  "The choice of what type of expert to use is one of trial strategy and deserves a 'heavy measure of deference.'"  *Turner v. Calderon*, 281 F.3d 851, 876 (9th Cir. 2002).  *See also Leavitt v. Arave*, 682 F.3d 1138, 1140-41 (9th Cir. 2012).

Defendant now submits the opinion of Charlene Sabin, M.D., to establish the type of testimony that Defendant contends trial counsel should have sought to introduce in his defense. Dr. Sabin opines:  "In the literature there is a wide range incidence of false allegations, ranging from less than 2% up to 50%."  Dr. Sabin identifies several general factors that can lead to a higher likelihood of false allegations, including the age of the child, the way the initial disclosure is made, the level of training and characteristics of the questioner, and the characteristics and experiences of the child.

14 - OPINION AND ORDER

Together with its Response Memorandum (#253), the government submits a Declaration from Defendant's trial counsel in which he reports he consulted with three experts in addition to Dr. Brady (who ultimately testified) as to the reliability of TF's testimony.  Trial counsel stated he also consulted with Dr. Scott Halpert, a pediatrician, regarding the lack of physical injury to TF.  In addition, trial counsel hired Dr. Eric Johnson, a forensic psychologist, to view the interview and material from CARES for signs that the interview was improperly suggestive and to render an opinion as to the nature of TF's statements and the integrity of the CARES evaluation.  Finally, trial counsel hired Dr. Daniel Reisberg, an expert in witness perception and false memories, to render an opinion as to whether there were any signs that TF had been coached to make false allegations or that she might have a false memory about the abuse.  After obtaining the opinions of Drs. Johnson and Reisberg, trial counsel concluded neither expert "would have offered any testimony helpful to the defense."

On this record, therefore, it is clear that instead of seeking experts to testify as to the general prevalence of false child sexual-abuse allegations, Defendant's trial counsel made the tactical decision to focus on retaining experts that could specifically testify to the unreliability of TF's statements. This tactical decision is especially reasonable in light of Dr.

15 - OPINION AND ORDER

Sabin's highly general and equivocal conclusions.[2]  Accordingly,
trial counsel's decision to focus on locating experts who could
testify to the unreliability of TF's testimony specifically as
opposed to the unreliability of sexual-abuse allegations made by
children in general was neither deficient nor prejudicial to
Defendant.

On this record, therefore, the Court concludes Defendant's
trial counsel did not render ineffective assistance of counsel
when he did not locate and call an expert witness to testify to
the general unreliability of sexual-abuse allegations made by
children.

## IV.  Certificate of Appealability

The district court should grant an application for a
certificate of appealability only if the petitioner makes a
"substantial showing of the denial of a constitutional right."
28 U.S.C. § 2253(c)(3).  To obtain a certificate of appealability
under 28 U.S.C. § 2253(c), a habeas petitioner must make a

---

[2] In addition, portions of Dr. Sabin's opinion are highly
confusing.  For example, Dr. Sabin opined:  "Some of the issues
that impact the validity of the allegations are:  1) The age of
the child, with children under 6 being more likely to make
unfounded allegations, with another peak of false allegations in
the school age and adolescent population as well."  The three
categories of children that Dr. Sabin identifies as most likely
to falsify sexual abuse allegations appear to include all
children.  As presented to this Court, therefore, the general and
equivocal nature of Dr. Sabin's opinion combined with the
confusing nature of portions of her proffered testimony would
have rendered Dr. Sabin's opinion inadmissible because it would
not have been helpful to the jury.

showing that reasonable jurists could agree that or debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 120 S. Ct. 1595, 1603-04 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Here the Court concludes Defendant has failed to make a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3).  Accordingly, on this record the Court declines to issue a certificate of appealability.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion (#246) to Vacate or Correct Sentence under 28 U.S.C. § 2255 and **DECLINES** to issue a certificate of appealability.

IT IS SO ORDERED.

DATED this 3rd day of September, 2015.

_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER